BENNETT v. BIJOU AUTO REPAIR CO.

(January 17, 1927. Opinion and Decree.)

*(Syllabus by the Court)*

1. **Louisiana Digest—Reconvention—Par. 19; Evidence—Par. 351.**

When plaintiff admits indebtedness for one-half of the amount claimed in defendant's reconventional demand and the preponderance of evidence is in favor of defendant as to remaining one-half, there will be judgment in favor of defendant for full amount claimed.

2. **Louisiana Digest—Sequestration—Par. 11.**

Sequestration will be dissolved where defendant proves that he has a lien on the automobile for an unpaid repair bill.

Appeal from Division "A", Civil District Court. Hon. Hugh Cage, Judge.

Action by Clarence J. Bennett against Bijou Auto Repair Company.

There was judgment for plaintiff and defendant appealed.

Judgment amended.

Arthur B. Leopold, Gerald Netter, of New Orleans, attorneys for plaintiff, appellee.

H. W. Kaiser, of New Orleans, attorney for defendant, appellant.

W. CATESBY JONES, J. This is a suit filed December 21, 1922, by the owner for sequestration of a Premier Sport automobile, said to be worth $1250.00.

Defendant answers admitting ownership, but claiming a repair lien on the car for $319.45, under a verbal contract to overhaul running gear made about three months prior to sequestration.

Under the agreement defendant was to receive $100.00 for all labor involved and plaintiff was to pay for all parts and machinery work.

Defendant also filed a reconventional demand for that amount with recognition of its lien.

Attached to the answer is a bill in longhand on the letterhead of defendant addressed to plaintiff for $319.45, the chief item of which is machine work for $155.00, and also a bill on the letterhead of Bishop-Edell Machine Works, Inc., totaling $155.30, and reading: "To labor and material covering the machine work on Premier Motor as below specified."

The judge below dissolved the sequestration and dismissed the reconventional demand of defendant as of non-suit with reservation of his right to file a new suit thereon and also to claim damages, if any, for wrongful issuance of writ.

After this judgment was signed on November 14, 1923, defendant on January 10, 1924, took a rule against plaintiff to show cause why the automobile should not be returned to its custody. To this rule plaintiff filed exceptions, which were maintained on January 28, 1924.

On January 30, 1924, defendant took a rule against the civil sheriff to show cause why he should not restore the seized automobile to his custody. To this rule the civil sheriff filed exceptions, which were overruled.

On January 31, 1924, the civil sheriff filed a rule against plaintiff to show cause why he should not restore the automobile to that official, because plaintiff's bond was defective. To this rule defendant filed an exception, which was maintained by the lower court on February 11, 1924.

Meanwhile on February 11, 1924, the rule of defendant against the civil sheriff was made absolute and he was ordered to deliver forthwith the automobile to defendant, and as this official failed to carry out the order on February 13, a rule for contempt was filed. Then on February 15, 1924, the civil sheriff took an appeal to this court from the decision of the lower court ordering him to restore the car to custody of defendant. This appeal is still pending in this court.

Plaintiff has filed an answer to the instant appeal asking that the judgment below be reversed insofar as it dissolves the sequestration.

Mr. Palms, a partner in defendant company, testifies that he made a verbal contract with Boudreaux, agent for plaintiff, for taking down and overhauling the running gear from top to bottom that he was to be paid $100.00 for labor and reassembling, but plaintiff was to furnish the parts and machine work; that defendant had no facilities for doing the machine work

necessary; had employed the Bishop-Edell works and had paid them for their work on the car, $155.30; that the car left the shop in perfect running order; that he lost money on the job.

Mandella, an employee of defendant for the past year, testified that he had operated machine shops of his own and had been engaged in automobile repairing for twelve years; that the bill of the Bishop-Edell Company for the machine work was reasonable.

Eumont, a witness for plaintiff, testifies that he had painted the car and been paid therefor; that he brought Boudreaux, plaintiff's agent, into defendant's shop and was present when contract was made.

Pages 2 and 3 of his testimony read as follows:

"Q. What was agreement?
"A. One hundred dollars for labor and they were to pay for all repair work.
"Q. Was anything else said?
"A. I do not remember.

By the court:

"Q. That is practically denying your other statement?
"A. If it was said I would have heard it and remember it?
"Q. How do you know you remember it?
"A. Well, he asked me if I remembered it and if I was present at the time and I said 'yes'.

By the court:

"That kind of interrogation does not impress me. Ask the witness what took place.

By Mr. Leopold:

"Q. Was there not another agreement about painting?
"A. Yes, I made it.

By the court:

"That has been testified to. It has nothing to do with this case on a contract.

By Mr. Leopold:

"Q. We want to refresh the witness' memory. Tell us exactly who was present and what was said when Mr. Boudreaux brought that machine up to the Bijou Auto Repair Company?
"A. I went in and got Mr. Palms and he came out and made a contract with Mr. Boudreaux. They *would* pay for all labor and *Mr. Boudreaux* would pay for *all parts*.
"Q. Was that all you heard?
"A. Yes, sir.
"Q. And then you left?
"A. Yes, sir.
"Q. With whom was that agreement made?
"A. Mr. Palms.
"Q. Was it made with Mr. Boudreaux?
"A. Yes, sir.
"Q. And you left?
"A. Yes, sir.
"Q. Was it $100.00 for parts?
"A. No, for labor.
"Q. How much for parts?
"A. They were to pay for all parts."

On rebuttal Mr. Palms testified that Eumont was present, but did not hear the whole conversation and that Boudreaux, who wanted to know the price before he touched the car, said: "We cannot make prices before we tear car down."

Boudreaux testified that Eumont called Palms out about machine work and Palms said he could not fix price until he took engine down and then he asked him how much he would charge to do the work, if he (Boudreaux) furnished all parts at the factory and Palms said he would do the work for $100.00; that nothing was said about machine work, but all parts were to be gotten from factory, as Premier people had no agency here; that he had owned automobiles for several years; had done some little repairing in Bennett's in back years; that defendant could have bought these parts cheaper from factory than he had them made at Bishop-Edell's place.

On page 10 of Boudreauxs' testimony, plaintiff's counsel makes the following admission:

"What I am trying to bring home to the court is this: The bill has been rendered for three items; one for $100.00, which we agreed to pay; one for $59.85 for parts which we say we owe them; and when it comes to $155.00 for machine work, we say we do not owe it. The defendant is trying to shift his position now. He is charging for machine work and not for parts."

On page 12 he testifies as follows:

"Q. You are not prepared to show the parts shown on this Bishop-Edell bill could be bought cheaper than repairing it and you are not prepared to say, are you?
"A. You could not buy new cylinders cheaper, but you could buy new sleeves cheaper.
"Q. Would not a new sleeve have to be ground?
"A. We fixed two in Covington in our front yard for $8.00.
"Q. There is nothing in the bill about sleeves?
"A. No. It says regrinding cylinders.
"Q. How do you know?
"A. Because it would be positively six or eight inches across there?

As plaintiff admits indebtedness of $159.85, defendant is clearly entitled to a judgment for that amount. This leaves a balance due of $159.50, and there is no dispute about the item of $4.50.

The sole question before us is whether contract covered the machine work done by Bishop Edell for $155.00.

We think the preponderance of the evidence and also of probability is with defendant on this point for three reasons:

1. Because plaintiff has failed to show that it would have been cheaper to buy all parts new from the factory than to have these parts repaired here, defendant lost money on job.

2. Because the evidence shows that defendant refused to make any estimate on cost of parts and confined his price of $100.00 strictly to 'labor", which must by all the dictates of common sense and every-day experience be held to mean only the labor furnished by him.

3. Because the bill for the machine work is proved reasonable; the work was satisfactory.

For above reasons the judgment below is now amended and it is ordered, adjudged and decreed that there be judgment in favor of defendant, recalling and setting aside and dissolving the writ of sequestration therein issued and reserving to defendant all rights to claim such damages, if any, as issuance of writ may have caused him.

It is further ordered, adjudged and decreed that there be judgment in favor of defendant on his reconventional demand against plaintiff in the sum of $319.45, with legal interest from judicial demand, and all costs.